RYDER et al. v. LACEY.

(District Court, N. D. New York. December 9, 1912.)

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SILO.
    The Harder patent, No. 627,732, for a silo, claim 4, construed on a motion for a preliminary injunction, and *held* valid against the claim of anticipation, and infringed.

2. PATENTS (§ 165*)—CONSTRUCTION OF CLAIMS.
    Unless a patentee has especially limited himself to a specific form of construction, or such limitation is imposed by the prior art or by the ac-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion of the Patent Office, acquiesced in by him, he is entitled to a broad, construction of his claims in accordance with the language thereof.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

In Equity. Suit by Edgar S. Ryder and others against Elmer B. Lacey. On motion for preliminary injunction. Granted.

Edmonds & Edmonds, of New York City (Samuel Owen Edmonds, of New York City, and Wallace R. Lane, of Chicago, Ill., of counsel), for complainants.

Thos. A. MacClary, of Union, N. Y. (W. D. B. Ainey, of Montrose, Pa., of counsel), for defendant.

RAY, District Judge. [1] This claim of this patent to Harder, No. 627,732, and issued June 27, 1899, was the subject of consideration by this court in Ryder v. Townsend (C. C.) 188 Fed. 792, decided April 1, 1911, and by the Circuit Court of Appeals, Third Circuit (Ryder v. Schlichter, 126 Fed. 487, 491, 61 C. C. A. 469, 473), and in both cases the claim was held valid and infringed. In Ryder et al. v. Beaver Silo & Box M. Co. (no opinion filed) January 23, 1912, Judge A. L. Sanborn followed these cases and granted a preliminary injunction. I am not aware of any decision to the contrary.

The claim in issue reads as follows:

"4. In a silo or tank having a continuous opening from top to bottom, braces between the edges of the walls forming the opening, door sections for closing the opening and reinforcing strips for its door sections, substantially as described."

Harder expressly states:

"I do not herein claim, therefore, the vertical opening from top to bottom, nor the round construction of the tank or silo, nor the means for closing formed in sections and inserted so as to be removable from the top downward and arranged to be pressed against the wall or any part of the wall in an outward direction, as I am aware that these devices and elements are very old in the same or analogous structures. My invention relates particuarly to the special form of brace or stay piece for holding the edges of the opening at the proper distance from each other to prevent collapse, and, further, in the special means for holding the sections of the door firmly in place."

While the breadth of this Harder patent, its proper construction, or interpretation, was in question in the cases to which attention has been called, the court in each case declined to limit claim 4 to the special form of brace and special form of reinforcing strip described by Harder. This court and the Circuit Court of Appeals in the cases referred to had that very question under consideration.

The defendant's structure is plainly within the broad language of claim 4 of the Harder patent. Lacey has (1) in a silo the continuous opening from top to bottom; continuous in the sense of the patent as expressed therein, for he says:

"The vertical opening in this silo is made from top to bottom and *practically* (not actually) continuous, and the opening is closed by a succession of boards or sections of doors inserted and removable from the top downward like the opening and sectional closing of an icehouse."

---

It is true that in the particular and specific construction shown by Harder, the opening, so far as inserting and removing the door sections was concerned, was actually continuous, as such sections could be inserted in the grooves or runways at the top and slid from top to bottom or from bottom to top; but this was an incident and not an essential of his patent. In the silo which this court held to be an infringement in the Townsend, or Economy Silo, case, the braces were so far projected into the opening that the sliding of the door sections from top to bottom was impossible, and such door sections were jointed or hinged so as to be removable by operating the hinge.

Lacey has: (2) "Braces between the edges of the walls forming the opening," and this is beyond any question whatever; (3) door sections for closing the opening; and (4) reinforcing strips for the door sections. If we limit "door sections" to the actual sections of doors, that is, the doors used to close the opening, and limit the words "reinforcing strips for the door sections" to strips placed on or incorporated into such doors and having the function of strengthening the doors themselves, we depart from Harder's actual invention and from his specifications. The language "reinforcing strips for the door sections" means something for reinforcing and making strong the walls of the silo at and near the edges of the opening or edges of the walls at the sides of the opening; the office or function being, when used with the braces, to keep the walls upright and rigid and in place and so prevent collapse, or a tendency to collapse, a bulging, or tendency to bulge. Take a pail, or keg, or a firkin, constructed of staves and surrounded with hoops, and it is firm, strong, and permanent; each stave braces every other stave, and the hoops prevent outward bulging, etc. Leave the hoops in place and remove one stave, making a continuous opening from top to bottom, and the whole structure will collapse. Remove a stave and insert braces at appropriate points between the exposed sides of the staves and crossing the open space made by the removed stave, and collapse is made impossible.

Harder's reinforcing strip, as shown, extended from top to bottom; but he did not so limit himself, and a construction which has: (1) A continuous opening from top to bottom; (2) braces between the edges of the walls forming the opening; (3) door sections for receiving sections of doors by which the opening is or may be closed; and (4) reinforcing strips for such door sections whether structurally applied to the walls of the silo perpendicularly or horizontally, and whether applied independently or in combination with the braces and forming a part thereof—infringes the Harder patent as I understand and construe it. These braces and reinforcing strips may be constructed of many shapes and applied in various ways. Unless Harder has actually limited himself to some particular form of brace and to some particular form of reinforcing strip, and has limited himself to some particular form of application, he is entitled to a broad range of equivalents. If he is a mere improver in the prior art, then he is limited to his improvement, of course, and to infringe the patented improvement must be used. The binding hoops of a silo tend to press the staves inwardly. The braces extending from the stave or door jamb

on one side of the opening to the stave or door jamb on the other side of such opening, to an extent only take the place of the staves left out to form such opening. But something more was found necessary in actual experience to preserve a proper coaction of the parts, and hence the reinforcing strips.

In the Lacey silo, complained of as an infringement, the reinforce is accomplished by bands which overlie the braces and extend from jamb to jamb and even beyond. These bands are screwed or bolted to the braces and are also secured to the door jambs or body of the silo at each end by having an outward bend at the end and a substantial iron casting of considerable mass in this angle. There is a perforation through this iron casting; the band and the jamb and all are secured together by a bolt and nut. As there are quite a number of these, the result is a substantial reinforcement and strengthening of the jamb members and adjacent parts, and they are strongly and rigidly attached to each other and to the braces. These braces and bands and jambs are so constructed with reference to each other that they form open sections for the doors, and into these the sections of door are placed, and the opening is made air tight. They are easily removed as the ensilage is taken out, the one after the other. I might enlarge upon this construction and compare it with that of Harder, but do not think it necessary. I am not prepared to say, and it is not necessary to say, that Lacey's construction is not an improvement on Harder; but it is perfectly plain that Lacey infringes claim 4 of Harder's patent unless we limit him in a manner and to a construction which has heretofore been refused. One may improve on the invention of another, but this gives him no warrant to use the prior invention. The first, second, and third claims of the Harder patent relate to the special and specific construction mentioned in the specifications and to the special form of brace, but the fourth claim in issue here is not so limited.

The defendant here contends that the Harder structure in suit was not an invention when produced by Harder and not then novel, and that a silo of the same construction, so far as the continuous opening and reinforcing strips are concerned, was used by one M. S. Allen in 1896, at Montrose, and by others in the state of Pennsylvania and "prior to the issue of the letters patent in suit," and by one Frank I. Johnson, at Union, N. Y., and by others in the state of New York "prior to the issue of the letters patent in suit," and that same was in public use more than two years before the said Geo. D. Harder made application for letters patent of the United States therefor.

Harder filed his application February 4, 1899. The affidavits of Frank I. Johnson, Miller S. Allen, Werdon H. Allen, and Adelbert Allen are filed to sustain this contention. If silos of the construction shown in Fig. 2 of the pencil drawing attached to the affidavit of Frank I. Johnson were constructed by him for different people from 1896 down to 1907 (when he moved to Endicott), as he states, he should be able to point out the farms on which erected, and some of such silos ought to be standing if of any value. It should be easy to produce one or more, or sections of one or more, sufficient to show

the exact construction. It should be easy to produce farmers who have owned and used them. However, it is self-evident that the use of the so-called iron bolts, screw threaded at each end and extending from one doorpost to the other and passing through same with a nut on the outside drawn down to such 3 by 4 posts, would neither efficiently brace the doorposts nor prevent the collapse of the silo. The walls of the silo, if wet, would expand and press such posts towards each other on the bolts. When dry, the staves, if not held by other means, would fall down. This or these difficulties were met by the use of iron hoops passing around the silo walls, except the open space, at intervals, and having screw threaded ends which respectively passed through such 3 by 4 doorposts and had a nut on the inner or open space side of same drawn down to the post. The result was that the hoops tended to draw the doorposts away from the opening (sidewise), while the bolts above spoken of tended to pull them into the opening. The doorposts or jambs were not strengthened or reinforced.

It is plain that such a structure would be short lived. Ensilage is full of moisture and fermentation. As put in and packed down the walls would be moistened, a section at a time; on removal the walls would dry out by sections from top to bottom. The expansion and construction of such doorposts would not coact with that of the staves standing side by side. This is not the combination shown in claim 4 of the patent in suit. The defendant here does not make and sell or make such a structure, or silo. No one would be enjoined by this court, as at present advised, from making and selling, or making and using, or using, or dealing in a silo so constructed. I doubt that in the present advanced and important state of the art a farmer would be to the expense of constructing one. Clearly it is not an anticipation of the Harder structure and patent. I am not to be understood as intimating that the patentable concepion of Harder resided simply in the idea of reinforcing the edges of the doorway, the door jambs. I think it would offend the common sense of the ordinary farmer, and especially the ordinary mechanic, to say that if he found the jambs of his doorway too weak, or so thin as to be weak, it would not occur to him to put on a reinforcing strip. But to build a round silo with a substantially continuous opening of considerable height and maintain it in position, firm and stable in all kinds of weather and under varying degrees of pressure and moisture, presented a puzzling problem which was solved by Harder, and he is entitled to protection.

It is evident, I think, that, by departing from the structure alleged to have been erected by Johnson and Allen, Lacey has adopted the idea and construction embodied in the patent to Harder. The braces and horizontal enforcing strips are rigidly connected and then connected to the (we will so denominate them) door jambs. He not only did this, but suggested and presented a construction which permitted the insertion of sections of door, and their removal section by section from top to bottom without damage to the silo, or weakening it, and without inconvenience to the user or injury to the contents.

The users and the builders of silos have recognized the superiority of the Harder construction as shown in his patent and, quite universally, have adopted it. There has been a substantial acquiescence in the superiority of the Harder conception, and even Lacey concedes this by using it. In view of the adjudications and crude state of the art at the time Harder came into the field, and of the fact that Lacey has abandoned the old so-called Allen construction, conceding it to be accurately described in the answering papers, and of the great importance of the art to the agricultural interests, and hence value of the patent to the inventor, I am constrained to grant the injunction prayed for, although I am also of the opinion that Lacey has improved on Harder's construction, assuming, of course, that his construction is accurately shown.

[2] But this is immaterial if Lacey infringes by using the device or devices or construction patented to Harder. Unless a patentee has especially limited himself to a specific form of construction, or such limitation is imposed by the state of the prior art, or such limitation was imposed by the action of the Patent Office in rejecting a broad claim and the substitution and acceptance of a narrower claim by the applicant, he is entitled to a broad construction of his claims in accordance with the language thereof. I do not intend to conclude myself in case this cause should come before me on final hearing. The defendant may be able to establish prior use of a combination which anticipated Harder, but the affidavits presented on this motion are not convincing in that respect. Before another silo season opens, the whole case can be presented and decided.

Motion granted. However, if Mr. Lacey desires to appeal and will do so within 40 days after being served with copy of order for injunction, the issue of the injunction will be suspended on condition he keeps and files an account of all silos made and sold by him, with price obtained and name and residence of purchaser, and files a bond in the sum of $2,000 conditioned to pay any judgment obtained in the suit.